IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GREGORY L. WHITE, ) | |
| ) | |
| & ) | |
| ) | |
| DONALD CHRISTIAN ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| ) | Civil Action No. 1:06-cv-01423-RCL |
| ) | |
| OCEAN DUCHESS, INC. ) | |
| ) | |
| & ) | |
| ) | |
| UNITED STATES GOV'T ) | |
| DEP'T OF TRANSPORTATION ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS PURSUANT TO
FED. R. CIV. P. 12(b)(1), 12(b)(3), AND 12(b)(6)**

Gregory L. White and Donald Christian, Plaintiffs, by their attorneys, Prabir Chakrabarty, Esquire, and Resnick & Schwartzman, L.L.C., submit this Memorandum in Opposition to Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(3), and 12(b)(6).

**I.    INTRODUCTION AND STATEMENT OF FACTS**

On or about August 14, 2005 the Defendant, Ocean Duchess, Inc. was awarded a contract by the United States Department of Transportation Maritime Administration (MARAD) to operate two sister ships, the S.S. Cape May and the S.S. Cape Mohican. Both African-American Plaintiffs, Gregory L. White and Donald Christian, had been model crewmembers on the S.S. Cape May since December 2000 and October 1995, respectively, until the date of their wrongful

terminations on September 13, 2005. More specifically, during this lengthy period of employment, neither Plaintiff received a negative review or reprimand. In fact, Plaintiff White received "Very Good" and "Excellent" ratings on several of his performance reports and evaluations, while Plaintiff White received primarily "Very Good" ratings on his reviews. **See the Unlicensed Crew Member Evaluation/Performance Reports attached hereto as Exhibit A and Exhibit B, respectively**. Yet, solely upon the recommendation of the Chief Mate, both Plaintiffs were discharged on September 13, 2005 on the basis of race and age. Subsequently, the Defendant has replaced both Plaintiffs' employment positions with younger Caucasian crewmembers.

## II.   APPLICABLE LAW

A Motion to Dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) is essentially a tool for measuring the legal sufficiency of a Complaint. Gasner v. County of Dinwiddie, 162 F.R.D. 280, 281 (E.D. Va. 1995), aff'd, 103 F.3d 351 (4th Cir. 1996). In order to evaluate such a motion, the Court may "consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." Moore v. Flagster Bank, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997). More importantly, a Rule 12(b) motion requires the Court to accept as true any factual allegations stated in the Complaint. Assa'ad-Faltas v. Virginia, 738 F. Supp. 982, 985 (E.D. Va. 1989), *aff'd*, 902 F.2d 1564 (4th Cir. 1990). Furthermore, Fed. R. Civ. P. 12(b)(1) also requires the Court to accept the facts alleged in the Complaint as true and construe them in favor of the plaintiff. Carter v. Arlington Pub. School Sys., 82 F. Supp. 2d 561, 564 (E.D. Va. 2000) (*quoting* Lane v. David P. Jacobson & Co., 880 F. Supp. 1091, 1094 (E.D. Va. 1995)).

Additionally, the Court has delineated grounds for dismissal of a Complaint, including

when the Plaintiff "has failed to allege any set of facts upon which relief can be granted." Marks v. Crawford, 882 F. Supp. 530, 532 (E.D. Va. 1993). In determining whether relief can be granted based upon certain facts the Court may utilize extrinsic evidence, including affidavits, depositions, or live testimony, to resolve factual disputes concerning jurisdiction. Carter, 82 F. Supp. 2d at 564 (*citing* Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995)). In this instance, both Plaintiffs have provided detailed affidavits that allege specific factual instances of racial and/or age discrimination on the part of an employee or agent of the Defendant. **See EEOC Letter of Gregory L. White and EEOC Letter of Donald Christian, attached hereto as Exhibit C and Exhibit D, respectively**. Thus, as a matter of law the Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(3), and 12(b)(6) should be denied.

### III.   ARGUMENT

Dismissal is inappropriate in this instance. First, further discovery is required in order to establish the applicability of the Equal Employment Opportunity Commission to the Plaintiffs' claims. Second, the Plaintiffs' Complaint stated valid claims of discrimination based on several facts indicative of the Defendant's discriminatory conduct. Third, the relevant facts alleged by the Plaintiffs suggest that Defendant's conduct rose to the level of outrageous conduct that warrants an independent claim of Intentional Infliction of Emotional Distress. Fourth, pursuant to 42 U.S.C. Section 2000e-5(f)(3) and general venue transfer statutes, venue is proper in multiple jurisdictions, including the District of Columbia or the State of Maryland. Consequently, this Court should deny the Opposition to Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(3) and Fed. R. Civ. P. 12(b)(6).

    **A.**   **Since the Defendant Qualifies as an "Employer" and the Plaintiffs Constitute "Employees" Under Title VII the Defendant's Motion to Dismiss Pursuant to**

**Fed. R. Civ. P. 12(b)(1), 12(b)(3), and 12(b)(6) is Improper.**

Contrary to the Defendant's assertion that the Ocean Duchess, Inc. ("ODI") does not qualify as an 'employer' covered under Title VII of the Civil Rights Act of 1964 ("Title VII"), the facts clearly indicate that the Defendant maintains more than the requisite number of employees for purposes of coverage. Under § 2000e(b), the term "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for … twenty or more calendar weeks in the current or preceding calendar year.' 42 U.S.C. § 2000e(b). In this instance, it appears that ODI falls under the purview of the United States Department of Transportation, Maritime Administration ("MARAD"), especially considering that they are joined as a Co-Defendant to this claim. Certainly, MARAD employs more than fifteen employees ever calendar year. Even assuming *arguendo* that MARAD is considered separate and apart from ODI, in its Motion to Dismiss, opposing counsel concedes that ODI controls both the S.S. Cape May and the S.S. Cape Mohican, as well as the fact that each ship maintains ten (10) crew members each. *See* Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(3), and 12(b)(6), ¶ IV(A). Furthermore, opposing counsel also concedes that it maintains three (3) other employees at ODI's corporate offices in Houston, Texas. Id. In total, ODI has direct control over at least twenty-three (23) employees, which is clearly greater than the requisite number required for purposes of Title VII applicability.

In seeking to avoid liability by circumventing Title VII applicability, the Defendant further avers that the S.S. Cape May is a singular enterprise rather than an integrated one. In support thereof, the Defendant states that "it operates with an entirely different crew in an entirely separate theater of operation." Neither of these facts adds credence to the claim that said vessel was a singular enterprise considering that most entities that maintain multiple offices have

different employees in different locales.  More importantly, various jurisdictions have set forth the key factors used in analyzing whether an integrated enterprise exists, including interrelation of operations, common management, directors and boards, centralized control of labor relations, and common ownership.  EEOC v. Eastern Dev. Enters., 66 Fair Empl. Prac. Cas. (BNA) 1449 (ED Pa., 1994); Auslander v. Collier & Tiku Assocs., 68 Fair Empl. Prac. Cas. 702 (DC Mass., 1995).  Here, Defendant concedes in its Motion at issue that the S.S. Cape Mohican "performs a similar function" to the S.S. Cape May and that both vessels share all relevant labor relations and corporate records at its offices in Houston, Texas.  *See* Defendant's Motion to Dismiss Pursuant to Fed.R. Civ. P. 12(b)(1), 12(b)(3), and 12(b)(6), ¶ IV(A), (E).  In addition, ODI shares its management personnel with Ocean Ships, Inc., a wholly owned subsidiary of another sole shareholder corporation named Shipholdings, Inc.  **See ODI's Letter to the EEOC attached hereto and incorporated herein as Exhibit E**.  This scheme of common functions and shared management demonstrates that the S.S. Cape May was an integrated enterprise for purpose of this action.

   Additionally, the Defendant seeks to dismiss this action on the grounds that the Plaintiffs were not employed for the requisite time period necessary to seek a claim under Title VII.  The Defendant misconstrues the true meaning of this requirement.  In fact, the term of "20 or more calendar weeks," cited by opposing counsel, specifically relates to definition of "employer" and not "employee."  For purposes of Title VII, "employee means an individual employed by an employer," as defined in subsection (b).  42 U.S.C. § 2000e(f).  If, however, the Defendant's contention is that ODI does not constitute an "employer" because it had only been awarded the contract twenty-nine (29) days prior to Plaintiffs' discharge, such an assertion would be equally inaccurate.  Under the doctrine of successor liability, ODI does qualify as an "employer" based

on the substantial continuity of the business identity of the entity in question. See Forde v. Kee Lox Mfg. Co., 17 Fair Empl. Prac. Cas. (BNA) 1603, 584 F.2d 4 (CA2 NY, 1978)(stating that following a change in ownership a substantial continuity in the identity of the work force suggests that the purchaser should be considered a successor for purposes of job discrimination actions). Based on the facts of this case, once ODI was awarded the MARAD contract it initially employed the same ten (10) crewmembers, including the Chief Engineer and Chief Mate, all of whom had served on the S.S. Cape May prior to ODI gaining control. Moreover, it would behoove both parties to specifically determine the actual degree of continuity maintained by ODI, which can only be addressed by means of further discovery. For these reasons, the assertions set forth by the Defendant with regard to this Court's lack of subject matter jurisdiction over this action are unwarranted.

      **B.**    **The Facts Alleged by the Plaintiffs Suggest a Pattern of Racial Discrimination on the Part of the Defendant Sufficient to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6); therefore, the Defendant's Motion to Dismiss Should be Denied.**

In filing for dismissal under Fed. R. Civ. P. 12(b)(6), the Defendant averred that Plaintiff White and Plaintiff Christian failed to state a claim for retaliation and age discrimination, respectively. The above-mentioned rule merely requires that a plaintiff plead facts sufficient to provide the defendant fair notice of the grounds on which the claim is based. Conley v. Gibson, 355 U.S. 41, 47 (1957). Here, the Plaintiffs Complaint and EEOC discrimination filing have given the Defendant more than sufficient notice of the grounds for this action.

In fact, the Defendant cites Taylor v. Small for the proposition that in order to state a valid claim for retaliation: (1) Plaintiff White must have been in engaged in a protected activity; (2) that ODI took adverse action against him; and (3) that a causal connection existed between

the protected activity and the adverse action. 358 U.S. App. D.C. 439, 350 F.3d 1286, 1292 (D.C. Cir. 2003). Although the Defendant has correctly identified the applicable case law, the Defendant has misread the Plaintiffs' pleadings and misapplied the facts of this case.

In Johnson v. Chase Home Fin., the Court granted an employer's motion to dismiss an employee's claim for retaliation in violation of Title VII and age discrimination under the Age Discrimination in Employment Act ("ADEA") only when it was made clear that the employee made no reference to such claims in her informal or formal charges to the EEOC. 309 F.Supp.2d 667 (ED Pa., 2004). Here, both Plaintiffs indicated that racial slurs were used by an agent of the Defendant and that on at least one occasion, that same individual has spoken derogatorily to the two African-American Plaintiffs and even threatened to falsify Plaintiff Christian's last drug test. **See Complaint, ¶ 17-18; Exhibit C and Exhibit D**.

Moreover, to satisfy the causal link requirement, the plaintiff need only prove that the protected activity and the negative employment action were not completely unrelated. Holifield v. Reno, 115 F.3d 1555, 1566 (11th Cir. 1997). Here, despite their openly discriminatory conduct toward the Plaintiffs, both the Chief Engineer and the Chief Mate were consulted by ODI during the probationary period and their statements were certainly instrumental in having the Plaintiffs discharged. Thus, the Plaintiffs have delineated sufficient facts in their Complaint and EEOC correspondences to state a valid claim against the Defendant.

With regard to the ADEA, a *prima facie* case of age discrimination is made if the plaintiff states facts that lead to a reasonable inference that age was a 'determining factor' in discharging the Plaintiff. Reid v. Jennifer, 1990 U.S. Dist. LEXIS 8808, *16 (D.D.C. 1990). Such an inference arises if the plaintiff alleges that: (a) he belongs to the statutorily-protected group of individuals over the age of forty; (b) he was qualified for the position in question; (c) he was the

7

target of an adverse employment decision despite being sufficiently qualified; and (d) the position at issue remained open or was subsequently filled by a younger employee. Id. In this instance, Plaintiff Christian was over the age of fifty at the time of the incident, placing him soundly within the protected group, and he had been serving as said vessel's electrician for over five years at the time of his wrongful termination, making him exceptionally qualified for the position at issue. And most significantly, the Defendant subsequently hired a younger white male to replace Plaintiff Christian. Apparently, age was a 'determining factor' in ODI's decision to discharge Plaintiff Christian, and hence, the Defendant's Motion to Dismiss should be summarily denied.

      **C.**    **The Defendant's Outrageous Conduct Toward the Plaintiffs Was Sufficient to State a Claim for Intentional Infliction of Emotional Distress and Thus, Denying Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(3), and 12(b)(6) is Unwarranted.**

Another claim that the Defendant asserts is that the Plaintiffs are unable to provide a basis for maintaining an independent cause of action for intentional infliction of emotional distress. In order to succeed on such a claim the plaintiff must demonstrate extreme and outrageous conduct on the part of the defendant, which was either intentional or reckless, and has caused the plaintiff severe emotional distress. Coleman v. Potomac Electric Power Co., 442 F.Supp.2d 209, 215 (D.D.C. 2006)(*citing* Ben-Kotel v. Howard University, 156 F.Supp.2d 8, 14 (D.D.C. 2001). More particularly, within the employer-employee context, the plaintiff must prove allegations of egregious conduct, such as a "pattern or campaign of harassment, intimidation, or abuse to rise to the level of extreme and outrageous conduct." Richardson v. Bell Atlantic Corp., 964 F.Supp. 54, 77 (D.D.C. 1996). Plaintiffs contend that the Defendant's actions did rise to such a level and that this type of discriminatory treatment merely surfaced

prior to ODI gaining control, but became openly outrageous during the probationary period and at the time of the Plaintiffs' discharge. Once again, further discovery is required to properly determine the egregiousness of the Defendant's conduct, especially that of the Chief Mate who frequently degraded Plaintiff White with racial slurs and who had also openly threatened to tamper with Plaintiff Christian's last drug test. *Supra*. This unwarranted discriminatory behavior and negative demeanor on the part of the Plaintiffs' supervisor not only led to their termination, it also caused the Plaintiffs lack of sleep, mental anguish, pain and suffering. *See* Exhibit C and Exhibit D. Further, these examples illustrate the 'campaign of harassment' and abuse implemented by the Defendant and its agents which give rise to an independent claim of Intentional Infliction of Emotional Distress. To resolve this dispute with regard to the Defendant's outrageous conduct, this Court should deny the Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(3), 12(b)(6).

        **D.**        **Pursuant to 42 U.S.C. Section 2000e-5(f)(3) and General Venue Transfer Statutes, Venue is Proper in Multiple Jurisdictions, Including the District of Columbia or the State of Maryland, and Thus Transferring the Instant Case to the Eastern District of Norfolk, Virginia Would be Improper.**

Lastly, the Defendant seeks dismissal based on the ground of improper venue. Once again, the Defendant's failure to acknowledge its own Co-Defendant, MARAD, has lead to improper conclusions on the part of opposing counsel and unnecessary confusion for this Court. First, neither ODI, nor MARAD, can deny the significant amount of business conducted by the United States Department of Transportation in and around the District of Columbia.

Second, although the Defendant averred that venue is limited to only: (1) where the unlawful employment practice is alleged to have been committed, (2) where the employment records relevant to the alleged unlawful employment practice are maintained and administered,

or (3) where the aggrieved person would have worked but for the alleged unlawful employment practice; the Defendant has neglected to recognize the applicability and effect of general venue transfer statues. 42 U.S.C. § 2000r-5(f)(3). In fact, Title VII actions are subject to transfer under such statutes, even for reasons of mere convenience. *See* 28 U.S.C. § 1404; Lewis v. Madison County Bd. of Education, 678 F.Supp. 1550, 1551-52 (M.D. Ala., 1988)(noting that Congress intended to place venue provisions of Title VII within the purview of the transfer clause of 28 U.S.C. § 1404). Here, besides the fact that MARAD and the United States Department of Transportation are located in the District of Columbia, it is undoubtedly excessively inconvenient for Plaintiff White and his counsel, both Maryland residents, to have to travel to Norfolk, Virginia on a regular basis. As such, the Motion to Dismiss for lack of venue does not satisfy the necessary burden, which permits this case to be heard in either Maryland or the District of Columbia.

      WHEREFORE, Plaintiffs, Gregory L. White and Donald Christian, move this Honorable Court to deny in Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(3), and 12(b)(6) , and grant any other relief the Court deems proper.

                              Respectfully Submitted,

                              Resnick & Schwartzman, L.L.C.

                              _____/S/_____
                              Prabir Chakrabarty, Esquire
                              One East Franklin Street
                              Baltimore, Maryland 21201

                              Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this _____ day of December, 2006, a copy of the foregoing Motion in Opposition to Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(3), and 12(b)(6) can be Granted and Memorandum in Opposition to Defendant's Motion was mailed first-class, postage prepaid, to:

Vijay K. Mago (VSB No. 40531)
LECLAIR RYAN, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street, P.O. Box 2499
Richmond, VA 23218-2499

Megan S. Ben'Ary (DC Bar No. 493415)
LECLAIR RYAN, A Professional Corporation
225 Reinekers Lane, Suite 700
Alexandria, Virginia 22314

Attorneys for Defendant

_____/S/_____
Prabir Chakrabarty, Esquire