May 12, 2006

U.S. Equal Employment Opportunity Commission
Norfolk Area Office
Federal Building, Suite 739
200 Granby Street
Norfolk, VA 23510
Attn: Ms. Terry Mattoon

Dear Ms. Mattoon:

As a follow-up to your letter dated April 21, 2006, I have reviewed the response given by Ocean Duchess, Inc. in regards to the discrimination charge I recently filed. Per your letter, my written response is provided below:

### Previous Attempts to Terminate My Employment

I have been shipping in the Deck Department since 1977. I started out as an Able Body Seaman and worked my way up to Bosum. I have been in the position of Bosum for over 15 years.

I started with CAPE MAY in December 2000. Since 2000, I have been unfairly fired and then rehired twice.

The first attempt to terminate my employment occurred on January 12, 2001. On January 16, 2001, I reported my termination to Union Hall and submitted statements along with evaluations documenting unfair treatment. After investigating the causes for my termination, and finding no bad evaluations during my history on CAPE MAY, I was told by the Union Representative to report back to work on January 17, 2001. On January 22, 2001, I was fired again, this time for only three working days on board the CAPE MAY, by the same Chief Mate who was involved in my most recent termination. Upon the second attempt to terminate my employment, I filed a complaint with the EEOC, but before an investigation could be pursued, I was rehired in February 2001. Since my second rehiring in February of 2001, I have remained on board the CAPE May, in the same Bosum supervisory position, with no negative evaluations and no reprimands from the Chief Mate or Chief Engineer until September 13, 2005, when I was once again fired without cause. This most recent discharge marks the 3rd attempt by the Chief Mate and/or Chief Engineer to terminate my employment.

### Factual Background

On August 15, 2005, Ocean Duchess Inc. was awarded a contract to operate the CAPE



PLAINTIFF'S EXHIBIT

MAY. I was hired as a senior unlicensed crew-member, to serve in the Deck Department as Bosum. I was already serving in this capacity on board the CAPE MAY for over 5 years. There were no changes in my daily routine nor job performance. The only difference was the change in the contracting company.

## Unfounded Reasons for Discharge

**Repeated Use of Cell Phone**: During our morning meeting in August 2005, all ROF crew on board the CAPE MAY were made aware that the use of cell phones were no longer allowed during working hours. After the morning meeting, I got together with all the unlicensed crew-members to reiterate the new cell phone policy and to inform all unlicensed crew members to keep their cell phones in their rooms during working hours. It is the policy of the Union, and a policy which management was aware, that verbal warnings must first be given, and if the improper behavior continued, then a written warning must be logged, with the knowledge of and accompanied by the presence of the affected party. If the actual reason for terminating my employment was excessive cell phone use as stated in the Chief Engineer's log book, I would have received a verbal warning and told to cease using my cell phone. However, such procedure was not followed and I was never given any warning regarding cell phone use. Therefore the stated reason seems suspect since it does not conform with the general employment policy.

**Bosum Supervision:** Ocean Duchess Inc.'s response regarding my failure to supervise is completely without merit. Based on Interocean Ugland Management's March 2005 evaluation, I had "excellent supervisory skills" and now to claim I am a person who failed to supervise his seaman is without proof and unsupported by any facts.

**Recycled: Paint Cans:** Ocean Duchess Inc.'s statement that the used paint cans was discarded instead of recycled was exaggerated an misrepresented. On the particular day cited by Management, my day ended at noon, and therefore I was not present when the cans were not disposed off in the proper manner. I later learned that the Able Body Seaman discarded the cans because they were empty, and he was not aware that the ship saved the cans for collecting rust out of the engine room. Furthermore, the statement that I was informed of the directive from MIRAD is completely false. I did not know of any directive that states "do not discard empty paint cans". I know for a fact that there is a directive stating that you do not discard of paint cans that have paint in them whether it is half full, half empty or never to be used, because it is considered hazardous waste material. Therefore, the statements made in the Chief Engineer's Log Book which I was unaware (in violation of employment rules) is completely false.

**Failure to Follow Instructions by my Supervisor**: In response to Ocean Duchess Inc.'s claim that I failed to follow instructions of my supervisor is once again without merit. Failure to follow instructions given to me by my supervisor would have resulted in a verbal warning, first, counseling second, and then a final write up, which would have resulted in my immediate termination. If any of the above had occurred, a 60 day probationary rule would not apply.

Instead, failure to follow instructions would have given management grounds for immediate discharge.

Ocean Duchess further claimed in their response that I was insubordinate because I refused to sign my termination letter. This was grossly misrepresented. I did not sign the termination letter because the letter did not contain any reason for my discharge, and did not justify the termination in any manner. Furthermore, I asked several questions relating to the reasons for my termination, and when answers were not forthcoming, I refused to acknowledge my unwarranted discharge. Moreover, management refused to explain how within a 28 day period, I went from a Bosum, who knew his job, (had excellent supervisory skills, was dependable and responsible and reliable) to a Bosum who the Chief Engineer and Chief Mate claimed exercised poor performance, poor workmanship and complete lack of supervision. Because I am a member of the union, and the ship's chairman for the Union, I knew it was my right to refuse to sign anything that I did not agree with.

**Unauthorized Personnel:** After working hours I escorted my female guest on and off the ship. During that time the Chief Engineer and the Director of Engineering passed by while I was in the process of escorting the female guest off the ship. There were no comments made at any time. A few days later during the morning meeting, the Chief Engineer stated there will no longer be any guests on board the CAPE MAY. Prior to that day, guests were allowed to visit before and after working hours. Therefore the claim of my escorting unauthorized personnel is not relevant, since the rule was changed at a later date.

**Late Arrival**: On September 12, 2005, I called into work stating that I may be late due to heavy traffic in the Hampton Road Tunnel. After I made the call, traffic started moving and I arrived on time for the morning meeting. For the 5 years on board the CAPE MAY, I have never been late or absent without following the ship's rules, and therefore I find the Chief Engineer's excuse without merit.

I have been onboard the CAPE MAY since 2000. I have followed the rules set forth by management each time the ship changed contractors. I have had positive evaluations and never reprimanded. For these reasons, I find the allegations for my termination set forth by Ocean Duchess Inc. baseless.

Sincerely

Gregory L. White
10208 Eyelet Court
Clinton, Maryland 20735