July 3, 2006

Ms. Terri Mattoon, Investigator
U.S. Equal Employment Opportunity Commission
Norfolk Local Office

Dear Ms. Mattoon,

    This letter is in response to your request of April 21, 2006 to provide evidence, which refutes the company's position referencing Donald M. Christian v. Ocean Duchess, Inc. – Charge 121-2006-00029. Also, covers other background information regarding my wrongful discharge.

    As previously stated, I have been employed as the Electrician aboard the S.S. Cape May since October 1995. My employment began with Intrepid Ship Management Inc. until February 2001, and then with Interocean Ugland Management Corporation until August 14, 2005. On August 15, 2005 Ocean Duchess Inc. was awarded the contract for this the S.S. Cape May. Whenever a company wins a contract to operate a ship, there is a 60-day probationary period. On September 13, 2005, I was presented a letter stating that I was terminated, discharged with no reason or explanation given. I feel I was discriminated against due to my race and age, which has led harm to me. It has caused me my job, lost of income to my household, mental anguish, and lost of sleep. Also, at the same time the Bosun was terminated/discharged under the same circumstances on the same day of which we both have been replaced with two white young males.

    I believe I was discharged because of my race, Black, and because of my age, 52. I felt that the Chief Engineer wanted less blacks and less seasoned workers. The Bosun and myself both black, and in our fifties, the oldest members of the crew. Our replacements again are younger, white, and have previously worked with the chief on other ships. I think he wanted a crew he could mold.

    I also believe that this discharge was in retaliation for us voicing our opinions on issues pertaining to the unlicensed crew and other matters. The Chief Engineer did not elaborate on issues, whether personnel issues, etc. I felt he did not want you to question any of the company's personnel with concerns you may have had which he did not expand on. A few instances are: When Ocean Duchess, Inc. took over the Chief Engineer stated that we have to sign a letter for the company to check our credit. I was skeptical and uncomfortable about having my credit in the hands of their shipping company personnel. I was told to sign it or I would loose my job. He also questioned that incident where I called Payroll to find out whether I could have a portion of my money sent home and a portion direct deposited. I asked the Chief Engineer prior to calling Payroll about this issue. He said he would check on it, but he never got back with me. At the morning meeting he informed the crew that he needed that information turned in the following morning, so that's why I had to call payroll myself. The following



PLAINTIFF'S EXHIBIT

morning meeting the Chief Engineer said all office communications is to be done through him as if we are not suppose to talk to office personnel. Another instance was when electrical contractors were on board the vessel making repairs and/or new installations, I would see them in the passage way and being the Electrician on board I would question them about their work to keep abreast of any changes and/or repairs and they would sometimes ask me questions. If the Chief Engineer saw me talking to anyone, i.e. contractors or MYRAID representatives, he would give me a strange look as if he did not want me to talk to anyone or he would comment to me "do you have work to do" as if I was ducking work.

I feel that I should have been given copies of the allegations detailed in the logbook as exhibits instead of excerpts noted. Responses to the allegations charge no. 21-2006-00029 – April 21, 2006 Letter from EEOC are as follows:

Allegation 8/16/05 Response: I was at that time doing battery maintenance and was getting baking soda from the Steward to make a solution to clean the batteries. The Steward was in charge of stores and I was out of baking soda.

Allegation 8/22/05 Response: I was retrieving a ladder from the Deck Department, which they have moved; I was not socializing with the Bosun, Greg White. I had stationed stepladders in different sections of the ship because the ship is large and when I saw the ladder missing I went to the Deck Department because they were always moving things of mines, i.e. stepladders, extension cords, and tools.

Allegation 8/24/05 Response: I was on a coffee break when the Chief Engineer observed me in the lounge watching television. It may have been a time when I had worked through my coffee break and was taking it at a later time. There have been times I have worked through my coffee break and my lunch break. I always look at television when I am on my break.

Allegation 8/25/05 Response: It is hard to be at my station when I am searching for parts. We have three (3) electrical storerooms on the ship and it takes time for me to look for parts. We have new Vidmar cabinets that store parts and I was not given time to label them and there are hundreds of drawers which are not filled in an orderly fashion; some of which were filled by the Deck Department. I cannot do my job without going to look for parts/hardware. The Chief Engineer never said to me if you need anything do not leave your station.

Allegation 8/30/05 Response: I was not on an unauthorized break as stated. I use my own tools, so I had to go back to my Stateroom to get my tools, which I purchased because the some of the ships do not have some of the tools needed to get the job done. I utilize mines to get the job done faster and efficiently; so depending on the job I do sometimes I have to go back and forth to my Stateroom to acquire them.

Allegation 8/31/05 Response: Our meetings are like two meetings in one where the officers and unlicensed are in attendance together, but the first part is for the officers and we the unlicensed have to sit through it for the next half which the Chief Engineer addressed the unlicensed to give out assigned duties. I do remember during one of our normal regular weekday meetings (not safety meeting) nodding off, but I am not the only one who has nodded before; even happened to some of the officers and other co-workers. It is something that happens to the best of us at times, as we are all human.

Allegation 9/1/05 Response: Hand gestures during the morning meeting - If the Chief Mate said this it's just a fabrication to make me look bad. I have no idea what he is talking about and it is hard to defend yourself when you do not know what incident he is talking about.

Allegation 9/6/05 Response: September 6, 2006 was my birthday, which I always take off. The Chief Engineer authorized me to a half-a-day off. Whether he noted it in the book, I do not know because sometimes he would tell you that he was not going to charge it. On that day the Chief Mate came into my room to bum a cigarette and my DVD player was on. I always leave my television on and everyone can attest to that. That's the only time the Chief Mate has come in my room. The Chief Engineer has never come into my room so he could not have observed me.

Last Allegation Response: I have always performed my work in a profession manner, never turned down or refused any job assignment, and have completed each task that was given me. Witnesses that can attest that any job given me I completed, are the 2nd Engineer, Deck Utility, and Steward, and also the 1st Engineer. Their names and phone numbers are attached. I find it strange that the Chief Engineer would have gave the Chief Mate the authority to follow crew members around to check to see if they are doing their jobs when he has his own work to be done as well. Everybody aboard ship is supposed to be a maintenance worker.

    I was very much aware of the 60-day probationary period and I knew my work performance would determine whether or not I would keep my job or not. It is strange to me that a man who wanted to keep his job would pick this time to alter his performance so drastically when he knows he is being evaluated for 60 days.

Sincerely,

*Donald M. Christian*

Donald M. Christian, Electrician
5407 Sasha Court
Williamsburg, Virginia 23188-1943

Attachment: (1)

Witnesses that can attest that any job given me I completed:

| | | |
|---|---|---|
| Tim Van Pelt | 1st A/E | 410-592-3975 |
| Micahel Marteny | 2nd A/E | 954-675-1832 |
| John Thompson | 3rd A/E | 727-522-5935 Cell: 561-452-6781 |
| Jeff Bull | OMU | 757-468-4757 |
| Greg White | Bosun | 301-856-7771 |
| Billy Ray Hanbury | A/B | 757-934-2215 |
| John Reid | Steward | 757-497-3995 Cell: 757-339-6893 |

## Other Information Pertaining to My Case
### That's not in the EEOC's Letter:

The Chief Engineer is the same person who terminated my employment of which I never received any verbal or disciplinary action during my probationary period, and signed my performance evaluation.

Prior to the last random drug test the Chief Mate asked me for a cigarette. When I refused him a cigarette he told me that I should remember who gives me my drug test, because he could make me fail the test. He said this in front of Billy Ray (A/B), Greg White (Bosun), and John Reid (Steward). The morning of the drug test, I brought this up to the Chief Engineer's attention prior to the test and the morning of the test I made the entire crew aware of what was going on and made the Chief Engineer aware of my fears of taking the test. The Chief Engineer told me that either I took the test or I would loose my job. I am not aware if the Chief Engineer had talked with the Chief Mate or not, however, the Chief Engineer said he would come down when I took my test, but he never showed up.

The majority of the time when I would asked the Chief Engineer to locate replacement parts for the ship from PC-SAL (which only the Chief Engineer and the 1st Engineer are trained to do) they would not have it, or it was obsolete. I was never supplied with the majority of replacement parts. I felt the Chief Engineer wanted me to make the parts. How can you make the equipment work when you do not have parts? They want you to make it work, but some of the equipment had to be jury-rigged because they did not have replacement parts. For no reason at all requisitions for parts were taken out of my hands and given to the 1st Engineer and then switched to the Chief Engineer. The Chief Engineer told me if I needed any parts place the part number and nomenclature on his desk. I did not fill out any part requisitions.

Keeping a Work Log:
I know keeping a work log is a MARAD (Maritime Administration) requirement for everyone on the ship, but the Chief Engineer told Jeffrey Bull (OMU) and myself we no longer had to keep a log. I was told of this as of May 23, 2004, and that he would keep a work log. I should have realized then that something was wrong because after my firing I returned back to normal shipping and ran into a friend, Randy Riddick, who informed me that he heard months before my firing (almost a year) that the Electrician who is presently on the Cape May said he was coming aboard the Cape May as the Electrician. Randy said he was wondering how he was going to do that knowing I was on the vessel as the Electrician at that time and had been on it for years. That is why I think it was a conspiracy against me (was set up in advance) and that is why these false charges of negligence and poor work performance was fabricated so he could get the crew he wanted. I am willing to bet if things have not changed in the manner in which the vessel is being ran now that the Electrician is not happy with it.