IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GREGORY L. WHITE,           ) | |
|                        ) | |
| &                    ) | |
|                        ) | |
| DONALD CHRISTIAN      ) | |
|                        ) | |
|       Plaintiffs,         ) | |
|                        ) | |
| v.                   ) | Civil Action No. 1:06-cv-01423-RCL |
|                        ) | |
| OCEAN DUCHESS, INC.     ) | |
|                        ) | |
| &                    ) | |
|                        ) | |
| UNITED STATES GOV'T     ) | |
| DEP'T OF TRANSPORTATION  ) | |
|                        ) | |
|       Defendants.       ) | |

**DEFENDANT OCEAN DUCHESS, INC.'S REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1), 12(b)(3) & 12(b)(6)**

Defendant, Ocean Duchess, Inc. ("ODI"), by counsel, and pursuant to Fed. R. Civ. P.

12(b)(1), 12(b)(3), and 12(b)(6), respectfully moves this Court to dismiss Plaintiff's action on the

grounds and for the reasons set forth with specificity in its Memorandum In Support Of Motion

To Dismiss and this Reply Brief In Support Of Motion To Dismiss.

I.      PRELIMINARY STATEMENT

Plaintiffs' opposition demonstrates that the various grounds on which ODI bases the

pending Motion To Dismiss are well-founded.  Rather than draw support from the Complaint to

establish that they state valid claims under Title VII, the ADEA, and the common-law of

intentional infliction of emotional distress, Plaintiffs seek repeatedly to introduce extrinsic

evidence to survive dismissal, and even though reliance on such evidence is improper.  For

instance, Plaintiffs attempt to impose Title VII and ADEA liability on ODI in spite of its claim that it does not constitute an "employer" as defined under these statutes, on grounds that (i) ODI must be a successor to Plaintiffs' prior employer, or (ii) ODI must be a joint employer of the United States Department of Transportation.  Incredibly, Plaintiffs do not offer any support for either assertion.  In fact, ODI does not constitute an "employer" as defined under Title VII and the ADEA, and Plaintiffs' supposition and conjecture to the contrary should be rejected.

The allegations in the Complaint also fail to satisfy the *prima facie* elements of a claim for retaliation.  Nothing in the Complaint or opposition papers establishes that Plaintiff White engaged in any protected activity, or that there is a causal connection between any protected activity and Plaintiff White's termination.  Similarly, Plaintiff Christian attempts to state a claim for age discrimination, but lacks allegations addressing each of the *prima facie* elements of such a claim, and nothing in the opposition papers rebuts this conclusion.  In fact, the inability of Plaintiffs to cite to discrete allegations in the Complaint (and their reliance on extrinsic evidence) to support their argument that a valid claim exists, merely confirms that dismissal of the age discrimination claim pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate.

Next, Plaintiffs fail to state a valid claim for intentional infliction of emotional distress, because allegations of race discrimination amount to extreme and outrageous conduct only where the allegations establish a pattern of harassment rather than isolated incidents of discrimination.  Plaintiffs fail to establish a pattern of harassment in the Complaint, and also fail to address the emotional distress they purportedly suffered due to their allegedly discriminatory discharges.  Given the disfavored status of this tort in the employment context, Count IV should be dismissed for lack of the requisite specificity.

2

Finally, this action should be dismissed for improper venue under Fed. R. Civ. P. 12(b)(3), or transferred to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404 or 28 U.S.C. § 1406. Although the Complaint asserts correctly that 42 U.S.C. § 2000(e)-5(f)(3) governs venue, the opposition papers argue unpersuasively and incorrectly that venue is proper in this Court. The only appropriate venue is the Eastern District of Virginia's Norfolk Division, because that is (i) where the unlawful acts are alleged to have been committed; (ii) where most of the relevant employment records are maintained; and (iii) where Plaintiffs would have worked but for the alleged unlawful acts.

<h2 style="text-align:center">II.  ARGUMENT</h2>

A.   <u>PLAINTIFFS CANNOT ESCAPE THE FACT THAT ODI DOES NOT CONSTITUTE AN "EMPLOYER" UNDER TITLE VII OR THE ADEA.</u>[1]

Apparently, Plaintiffs have chosen to oppose dismissal by advancing naked assertions about ODI's status as an "employer" under Title VII and the ADEA. For instance, Plaintiffs assert that ODI must be a successor corporation to their prior employer, InterOcean Ugland Management Corporation ("InterOcean"), given that ODI assumed operation of the ship to which they were assigned. See Pls.' Mem. Opp'n at 5-6 (seeking to establish that ODI employed requisite number of employees for requisite period of time based on doctrine of successor liability). Notably, Plaintiffs fail to offer any support for this assertion. In reality, ODI has no affiliation at all with InterOcean, and does not constitute a successor under any doctrine of

---

[1] LCvR7(f) addresses oral hearings, and provides that "A party may in a motion or opposition request an oral hearing, but its allowance shall be within the discretion of the Court." Pursuant to this rule, ODI reiterates its request for an oral hearing to present the evidence necessary to substantiate its position that it did not employ the requisite number of individuals for the requisite period of time. As an alternative, ODI can present this evidence via affidavit testimony. In fact, ODI has already prepared a draft affidavit that can be filed immediately.

successor liability.  Rather, InterOcean is a distinct corporate entity that continues to operate as it did before, and that constitutes a direct competitor of ODI.  In fact, ODI was in direct competition with InterOcean for the operating contract on the S/S Cape May, the ship to which Plaintiffs were assigned.  Needless to say, Plaintiffs incredible effort to impose Title VII and ADEA liability by fabricating corporate acquisitions must fail.

Equally specious, Plaintiffs assert without support that ODI constitutes an employer, because it "falls under the purview of the United States Department of Transportation."  See Pls.' Mem. Opp'n at 4.  Again, there is no basis in fact for this position, and it strains credulity for Plaintiffs to oppose dismissal on this ground given their failure to name the United States Department of Transportation as a responding party during the administrative phase of this proceeding.

Plaintiffs' protestations and naked assertions notwithstanding, ODI does not constitute an "employer" under Title VII or the ADEA, because it failed to employ more than 15 (or 20) individuals at all times relevant to this action, and private employers like ODI are covered by Title VII and the ADEA only when they have the requisite number of employees.  See 42 U.S.C. § 2000e(h).  In addition, Title VII and the ADEA cover private employers like ODI only when they employ the requisite number of employees in each working day, in each of 20 or more calendar weeks, in the current or preceding calendar year, 42 U.S.C. § 2000e(b).

Significantly, Plaintiffs can not dispute that they and the other members of the S/S Cape May crew became ODI employees for the first time on August 15, 2005, a mere 29 days prior to Plaintiffs' termination.  Equally significant, because ODI was not operating any ships prior to the decision of the United States Department of Transportation to award it a contract on August 15,

4

2005, ODI did not employ the requisite number of employees for coverage under Title VII (15 employees) or the ADEA (20 employees). Specifically, ODI did not employ more than 15 employees for each working day, in each of 20 or more calendar weeks, in the current year (i.e., the year in which the alleged discrimination took place), or the preceding calendar year. The current calendar year refers to the year in which the alleged discrimination took place, not the year in which the charge of discrimination was filed, or the year starting after the date of the alleged discrimination. See EEOC Decision No. 76-610, 1975 WL 4432 (1975); Komorowski v. Townline Mini-Mart & Restaurant, 162 F.3d 962 (7th Cir. 1998).

Given the inability of Plaintiffs to proffer credible opposition to these indisputable facts, dismissal of this action based on the fact that ODI does not constitute an "employer" as defined under Title VII and the ADEA is appropriate.

B.    THE OPPOSITION PAPERS FAIL TO RESUSCITATE PLAINTIFF WHITE'S RETALIATION CLAIM.

Nothing in the Memorandum In Opposition alters the inescapable conclusion that Plaintiff White cannot state a viable claim for retaliation against ODI. Significantly, Plaintiffs fail completely to address the primary argument that Plaintiff White did not engage in any protected activity during his employment with ODI. Instead, Plaintiffs assert only the following in seeking to convince this Court that Plaintiff White engaged in a protected activity:

> Here, both Plaintiffs indicated that racial slurs were used by an agent of the Defendant and that on at least one occasion, that same individual has spoken derogatorily to the two African-American Plaintiffs and even threatened to falsify Plaintiff Christian's last drug test.

Pls.' Mem. Opp'n at 7. This argument reflects a fundamental misunderstanding of the protected activity element of a retaliation claim. One is not engaging in protected activity merely because he

or she happens to be a member of a protected category.  Similarly, one is not engaging in a

protected activity merely because he or she is subjected to hostile or harassing conduct.  Rather,

protected activity requires some affirmative, employee driven conduct that is motivated by a

desire to vindicate his or her rights under Title VII, the ADEA, or another equal employment

opportunity law.  Although this requirement is articulated explicitly in the Memorandum In

Support Of Motion To Dismiss, Plaintiffs fail to identify any protected activity in which they

engaged during their brief employment with ODI (from August 15, 2005, through September 13,

2005).  Consequently, and equally significant, Plaintiffs cannot satisfy the third *prima facie*

element of a retaliation claim (i.e., a causal connection between the protected activity and the

adverse employment action).

     In addition to this inability to identify a protected activity (now or on amendment),

Plaintiff White seeks to resuscitate his retaliation claim by invoking extrinsic evidence that this

Court cannot consider in evaluating the pending Motion To Dismiss.  When a party moves to

dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court can consider only the Complaint,

documents attached or incorporated into the Complaint, and matters over which the Court may

take judicial notice.  Trudeau v. Fed. Trade Comm., 456 F.3d 178, 183 (D.C. Cir. 2006).

Exhibits and facts presented in opposition papers are not properly before the Court.

     In spite of this standard of review, and although nothing in his extrinsic evidence identifies

a protected activity or otherwise resuscitates his retaliation claim, Plaintiff White opposes

dismissal of the retaliation claim by citing correspondence Plaintiffs transmitted to the EEOC to

respond to ODI's Statement of Position.  These documents, which were never transmitted to ODI

at any point during the administrative phase, do not constitute a part of the charge of

discrimination.  In fact, ODI reviewed this extrinsic evidence for the first time on Monday, December 11, 2006.  In light of the prevailing standard of review, Exhibits C and D should not be used to evaluate whether Plaintiff White states a viable claim for retaliation.

Finally, Plaintiffs misplace their reliance on Johnson v. Chase Home Finance, 309 F. Supp. 2d 667 (E.D. Pa. 2004) in asserting that this Court may consider Exhibits C and D in evaluating the pending Motion To Dismiss.  See Pls.' Mem. Opp'n at 7.  Specifically, the Johnson Court evaluated dismissal of a retaliation claim for failure to exhaust administrative remedies rather than failure to state a claim.  Johnson, 309 F. Supp. 2d at 669-70.  Given this distinct basis for dismissal of the claim, the Johnson Court was required to evaluate whether the employer was ever placed on notice of a retaliation claim at the administrative phase.  In Johnson, the claims and defenses asserted at the administrative phase were therefore dispositive.  Because of this significant distinction, the rationale in Johnson is utterly irrelevant to the issue the pending Motion To Dismiss presents.[2]

C.    PLAINTIFF CHRISTIAN'S OPPOSITION CONFIRMS THAT HE LACKS FACTS ESSENTIAL TO STATE A VIABLE CLAIM OF AGE DISCRIMINATION.

To state a *prima facie* case of age discrimination under the ADEA, a plaintiff must allege facts sufficient to create a reasonable inference that age was a determining factor in the relevant employment decision.  Nothing in Plaintiffs' opposition papers alter the conclusion that Plaintiff Christian fails to set forth any facts even suggesting that age was a determining factor in ODI's decision to discharge.

In evaluating whether Plaintiff Christian states a viable claim of age discrimination, this

Court should consider only "'facts alleged in the complaint, any documents attached to or incorporated in the complaint, and matters of which [the Court] may take judicial notice.'" Trudeau v. Federal Trade Commission, 456 F.3d 178, 183 (D.C. Cir. 2006) (quoting EEOC v. St. Francis Xavier Parochial School, 117 F.3d 621, 624-25 (D.C. Cir. 1997)). Because Plaintiffs failed to attach any documents to the Complaint, this Court need consider only the Complaint's explicit factual allegations, and matters over which the Court may take judicial notice. In derogation of this well-established standard of review, Plaintiffs' opposition papers seek to introduce a panoply of facts purportedly relevant to Plaintiff Christian's ADEA claim, but all of which are based on documents and information extrinsic to the Complaint. Plaintiffs' misplaced reliance on such extrinsic evidence to defeat dismissal of the ADEA claim is fatal.

   None of the various new facts set forth in Plaintiffs' opposition papers are based, explicitly or implicitly, on the facts in the Complaint. Indeed, only once do Plaintiffs cite or refer to allegations in the Complaint to support their opposition to the pending Motion To Dismiss, and this singular citation is unpersuasive for the reason set forth in the section addressed to the vitality of the retaliation claim. The absence of citations or references to the Complaint to defeat dismissal of the ADEA claim is both significant and telling; the Complaint lacks facts essential to state a *prima facie* case of age discrimination under the ADEA.

   Even assuming this Court can take judicial notice of Plaintiff Christian's age (the most fundamental of the essential allegations missing from the Complaint), Plaintiff Christian fails to establish that he was qualified for the position in question, and that he was terminated under

---

2 Even if Plaintiffs rely on Johnson to argue that this Court should review the underlying charges of discrimination before ruling on the pending Motion To Dismiss, Plaintiffs' failure to attach the charges of discrimination to their opposition papers is telling.

circumstances giving rise to an inference of age discrimination.  For instance, Plaintiff Christian

fails to even identify or otherwise describe the position in question, and fails to set forth facts

establishing his qualifications for this position.  As a consequence of the failure to establish his

qualifications for whatever position he occupied, Plaintiff Christian fails also to establish that he

was the target of an adverse employment action despite being qualified for that position.

Similarly, and equally significant, nowhere in the Complaint does Plaintiff Christian

establish the age of his purported replacement.  Although the Complaint alleges that ODI replaced

Plaintiffs with Caucasian employees, Plaintiffs fail completely to allege the age of the purported

replacements.  Although Plaintiff Christian seeks to rectify this fatal omission by setting forth new

facts for the first time in the opposition papers, he is unable to cite or refer to any existing

allegations in the Complaint to support his opposition and, therefore, his opposition is both

improper and not compelling.  Plaintiff Christian's introduction of new facts in the opposition

papers merely confirms that the Complaint lacks the factual allegations essential to state a *prima

facie* case of age discrimination, much less create a reasonable inference that age was a

determining factor in ODI's decision to terminate Plaintiff Christian's employment.

D.    COUNT IV FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL
      DISTRESS.

In their opposition, Plaintiffs fail also to provide a single, compelling reason why they are

entitled to maintain a claim for intentional infliction of emotional distress rather than seek

emotional distress damages in the framework of Title VII.  Absent extraordinary circumstances,

which Plaintiffs have failed to establish are present here, damages for emotional distress are

subsumed in claims for discriminatory discharge under Title VII, and are recoverable under that

scheme, and as contemplated in  42 U.S.C. § 1981a.

Race discrimination infrequently amounts to extreme and outrageous conduct, and a plaintiff seeking recovery for this independent tort must first allege facts demonstrating "a pattern of harassment," rather than those involving only "a few isolated incidents" of discrimination.  Paul v. Howard University, 754 A.2d 297, 308 (D.C. 2000); see also Martin, 2000 U.S. Dist. LEXIS at *4 ("[T]he discrimination allegations must be 'particularly egregious, such as [a] pattern or campaign of harassment, intimidation, or abuse, to rise to the level of extreme and outrageous conduct.'" (quoting Richardson v. Bell Atlantic Corp., 946 F. Supp. 54, 77 (D.D.C. 1996))). Also, when the employer/employee relationship is involved, the judiciary has "traditionally been demanding in the proof required to support an intentional infliction of emotional distress claim." Kerrigan v. Britches of Georgetowne, Inc., 705 A.2d 624, 628 (D.C. 1997); see also Duncan v. Children's Nat'l Med. Ctr., 702 A.2d 207, 211-12 (D.C. 1997).  Finally, to survive the pending Motion To Dismiss, Plaintiffs must point to facts in the Complaint that "afford a basis for concluding that [the plaintiff] may be able to prove conduct of the required enormity." Carey v. Edgewood Mgmt. Corp., 754 A.2d 951, 956 (D.C. 2000) (emphasis deleted).  In other words, it is not sufficient to merely reserve judgment and permit "further discovery . . . to properly determine the egregiousness of the Defendant's conduct," as Plaintiffs suggest. See Pls.' Mem. Opp'n at 9.

Although Plaintiffs recite this law correctly and acknowledge their uphill battle, they fail to identify any facts in their Complaint meeting this rigorous standard.  Instead, Plaintiffs merely argue as follows, and fail to cite to allegations in the Complaint substantiating their position, even if only slightly:

10

Plaintiffs contend that the Defendant's actions did rise to such a level and that this type of discriminatory treatment merely resurfaced prior to ODI gaining control, but became openly outrageous during the probationary period and at the time of the Plaintiffs' discharge. Once again, further discovery is required to properly determine the egregiousness of the Defendant's conduct, especially that of the Chief Mate who frequently degraded Plaintiff White with racial slurs and who had also openly threatened to tamper with Plaintiff Christian's last drug test. This unwarranted discriminatory behavior and negative demeanor on the part of the Plaintiffs' supervisor not only led to their termination, it also caused the Plaintiffs' lack of sleep, mental anguish, pain and suffering. See Exhibit C and D. Further these examples illustrate the "campaign of harassment" and abuse implemented by the Defendant and its agents.

Pls.' Mem. Opp'n at 8-9. Just with the claims of age discrimination and retaliation, Plaintiffs cannot point to a single allegation in the Complaint to buttress their argument that they state a valid claim for intentional infliction of emotional distress. The singular citation to authority supporting Plaintiffs' argument relates to documents that this Court cannot consider in evaluating the pending Motion To Dismiss. More telling, however, is Plaintiffs' resort to extrinsic evidence and supposition to defeat the pending Motion To Dismiss. Nothing in the Complaint establishes that ODI "frequently degraded Plaintiff White." See Pls.' Mem. Opp'n at 9. Similarly, nowhere does the Complaint allege that ODI "openly threatened to tamper with Plaintiff Christian's last drug test." See Pls.' Mem. Opp'n at 9.

Finally, even assuming for the sake of argument that such facts could be inferred from the scant paragraphs addressed to the *prima facie* elements of this tort, such implicit allegations fail to approach the rigorous standard for stating a valid claim for intentional infliction of emotional distress. Nothing in the Complaint, whether explicitly or implicitly, establishes conduct that could be considered a pattern or campaign of harassment, intimidation, or abuse by ODI. Thus, there is no basis for concluding that Plaintiffs may be able to prove facts sufficient to make out a claim for

intentional infliction of emotional distress.   For this reason, Count IV should also be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

E.    THIS ACTION SHOULD BE DISMISSED BASED ON IMPROPER VENUE.

    In their opposition, Plaintiffs argue incorrectly that pursuant to the general venue statutes, venue is proper in this Court on grounds of convenience.  In advancing this argument, Plaintiffs misinterpret the common-law on which they base their argument, and ignore the specific venue provisions governing Title VII actions like this one.  Indeed, Plaintiff's argument reflects nothing more than a plain misstatement of the law.

    First, Plaintiffs rely inappropriately on Lewis v. Madison Couty Bd. of Education, 678 F. Supp. 1550 (M.D. Ala. 1988), to support the bald assertion that pursuant to the general venue statutes, venue is proper in this Court on grounds of convenience.  The Lewis Court transferred a class action from the Middle District to the Northern District of Alabama, primarily because the Northern District satisfied all three Title VII venue categories, while the Middle District satisfied none.  Lewis, 678 F. Supp. at 1551-52.  In addition, the respondent's principal place of business was in the Northern District.  Lewis, 678 F. Supp. at 1552.  The Lewis Court then briefly addressed convenience of the parties under 28 U.S.C. § 1404(a), but found that after reviewing venue under 42 U.S.C. § 2000e-5(f)(3), there was "no consideration which would justify venue" in the jurisdiction where the case was originally filed.  Id.

    In light of this holding, Plaintiffs' reliance on Lewis is misplaced.  In fact, the holding in Lewis actually supports the dismissal of this action pursuant to Fed. R. Civ. P. 12(b)(3).  The Lewis Court transferred venue to the Northern District because *all* of the Title VII venue factors were met in that district, and because *no* consideration justified venue in the district where the

12

case was filed.  Just as with the plaintiff's selection in <u>Lewis</u>, this forum does not satisfy any of the

Title VII venue factors:  (i) the alleged unlawful employment practices were not committed in the

District of Columbia; (ii) the relevant employment records are not maintained or administered in

the District of Columbia; (iii) Plaintiffs would not have worked in the District of Columbia but for

the alleged discrimination (but would have continued working in the Norfolk Division of the

Eastern District of Virginia but for the alleged discrimination); and (iv) the Defendant's principal

office[3] is not located in the District of Columbia. Further, although not a factor under the Title VII

venue statute, neither Plaintiff White nor Plaintiff Christian resides in the District of Columbia.

Thus, there is no basis for holding that Plaintiffs' selection of this forum is proper.

     Equally significant to Plaintiffs' misplaced reliance on <u>Lewis</u>, this Court has held explicitly

that Title VII's specific venue provisions supersede general venue provisions like the ones on

which Plaintiffs base their opposition.  <u>Peary v. Tenet</u>, 2004 U.S. Dist. LEXIS 27668, *3-4

(D.D.C. 2004) ("Venue in a Title VII case is strictly limited by [42 U.S.C. § 2000e-5(f)(3)],

through which Congress clearly intended to restrict venue to those judicial districts concerned

with the alleged discrimination … *This venue provision limits the choice of available forums, and*

*supersedes all other venue provisions governing actions in the federal courts*." (citations

omitted) (emphasis added)).  Further, this Court has held consistently that the appropriate

standard for determining the proper venue in Title VII cases is not governed by the general venue

statute, but is governed strictly by the Title VII venue provision at 42 U.S.C. § 2000e-5(f)(3).

---

3 Because the Department of Transportation will likely seek dismissal based on Plaintiffs' failure to exhaust administrative remedies and the lack of any allegations establishing that the Department of Transportation constitutes a joint employer, a determination of venue should be based solely on factors related to Plaintiffs and Defendant ODI. Alternatively, this Court should delay an adjudication of this issue until the Department of Transportation files its responsive pleadings on January 11, 2007.

See, e.g., Jyachosky v. Winter, 2006 U.S. Dist. LEXIS 44399 (D.D.C. 2006); Lee v. England, 2004 U.S. Dist. LEXIS 3680, *1 (D.D.C. 2004) ("Venue in a Title VII case is governed – strictly governed – by 42 U.S.C. § 2000e-5(f)(3)."); Quarles v. Gen. Inv. & Dev. Co., 260 F. Supp. 2d 1, 8 (D.D.C. 2003); Darby v. United States Dep't of Energy, 231 F. Supp. 2d 274, 277 (D.D.C. 2002)).

III.    CONCLUSION

WHEREFORE, for the foregoing reasons, and for the reasons set forth in Memorandum In Support Of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(3), and 12(b)(6), Defendant, Ocean Duchess, Inc., respectfully moves the Court to dismiss the action filed against it, and to award it all such other relief as may be just and fair, including its costs and fees expended in this matter.  With regard to the Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3), Defendant, Ocean Duchess, Inc., respectfully moves this Court in the alternative to transfer this action to the Eastern District of Virginia, Norfolk Division, as it constitutes the appropriate forum.

14

Respectfully submitted,

OCEAN DUCHESS, INC.

By:_____/S/  Megan S. Ben'Ary_____
                        Counsel

Dated:  December 15, 2006

Vijay K. Mago (VSB No. 40531)
LeClair Ryan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street, P.O. Box 2499
Richmond, VA 23218-2499
Phone:  (804) 783-7579
Fax:  (804) 783-7531

Megan S. Ben'Ary (DC Bar No. 493415)
LeClair Ryan, A Professional Corporation
225 Reinekers Lane, Suite 700
McLean, Virginia 22314
Telephone:  (703) 684-8007
Facsimile:  (703) 684-8075

*Counsel for Ocean Duchess, Inc.*

15