IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GREGORY L. WHITE, <br><br> & <br><br> DONALD CHRISTIAN <br><br> Plaintiffs, <br><br> v. <br><br> OCEAN DUCHESS, INC. <br><br> & <br><br> UNITED STATES GOV'T <br> DEP'T OF TRANSPORTATION <br><br> Defendants. | Civil Action No. 1:06-cv-01423-RCL |

## DECLARATION OF ROBERT T. MILLER, ESQUIRE

Pursuant to 28 U.S.C. § 1746, I, Robert T. Miller, Esquire, do hereby declare and certify under penalty of perjury that the following testimony is true and correct:

1. I am over the age of eighteen (18), believe in the obligation of an oath, and am competent to attest to the matters contained in this Declaration.

2. I make this Declaration on the basis of my own personal knowledge.

3. I am currently employed as Counsel by Ocean Ship Management, Inc. ("OSM"), and I have been employed in this capacity since May, 1993. In my capacity as Counsel for OSM, I provide services to Ocean Duchess, Inc. ("ODI") on an as-needed basis. In fact, I am serving as the point of contact with counsel defending this action on behalf of ODI.

4. ODI was founded as a Houston, Texas based provider of ship management services. ODI is a sole shareholder corporation that operates ships. ODI's mission is to provide

quality ship management services for its customers in a safe, efficient, and cost-effective manner with minimal impact on the environment.

5. In 2005, the United States Department of Transportation, Maritime Administration ("MARAD") awarded ODI a contract to operate two sister ships in its fleet, the S/S Cape May berthed in Norfolk, Virginia, and the S/S Cape Mohican berthed in Alameda, California. The S/S Cape May, aboard which both of the plaintiffs served, was designed to carry barges.

6. Pursuant to its MARAD contract, ODI assumed management of the S/S Cape May on August 15, 2005. ODI included a provision in both of its labor contracts directing that all employees are on probationary status for the first sixty (60) days of employment with ODI. During this probationary period, an employee can be discharged without the ability to grieve his or her discharge through any collective bargaining grievance procedure.

7. ODI never actually screened or selected either plaintiff to work aboard the S/S Cape May prior to assuming management responsibilities. Rather, ODI inherited both plaintiffs based on its decision to commence operation of the S/S Cape May during the changeover by conditionally accepting the entire crew employed by the prior ship manager, InterOcean Ugland Management Corporation ("InterOcean"). Both men were hired as probationary employees for a 60 day period pursuant to ODI's agreement with the Seafarer's International Union. Under the agreement terms, any of these employees conditionally hired could be terminated without recourse to union grievance procedures. This procedure provided continuity of operations aboard ship while allowing ODI the opportunity to evaluate each crew member and remove those members who were not performing to ODI's standards.

8. ODI has no affiliation at all with InterOcean, which is a distinct corporate entity. In fact, ODI was in direct competition with InterOcean for the operating contract on the S/S Cape May. Although InterOcean was the incumbent, ODI won the operating contract. Although both plaintiffs may have performed to InterOcean's standards, neither performed well for ODI, and both were therefore terminated during the probationary period of their employment. The plaintiffs' job performance while with another employer is irrelevant to this action.

9. Plaintiffs were ODI employees from August 15, 2005, through September 13, 2005.

10. During the plaintiffs' brief employment and following their termination, ODI employed 20 individuals worldwide. More importantly, prior to August 15, 2005, ODI was not operating any crewed ships and did not employ anyone. Rather, ODI was served on an as-needed basis by employees of OSM, such as myself, a purchaser/buyer, and a project manager. These are the 3 individuals to whom we refer in our Memorandum in Support of Motion to Dismiss.

11. Because ODI was not operating any crewed ships prior to MARAD's decision to award it a contract on August 15, 2005, it did not employ the requisite number of employees for coverage under Title VII (which requires a minimum of 15 employees) or the ADEA (which requires a minimum of 20 employees). Specifically, ODI did not employ more than 15 employees for each working day, in each of 20 or more calendar weeks, in the current year (i.e., the year in which the alleged discrimination took place), or the preceding calendar year. In fact, ODI, did not employ any individuals in 2005 prior to MARAD's decision to award it a contract on August 15, 2005, because the 3 ships under ODI's operational control were docked in Japan in deep reserve and, therefore, did not require any active crew.

12. Finally, there were only two occasions between 2001 and the beginning of 2005, where ODI employed more than 15 individuals (approximately 28-30 to be more precise), but only for a period of approximately 3 weeks while ships under ODI's operational control were serviced in Japan. Once ODI completed the required service of these ships, the ships were returned to port on deep reserve, the 28-30 individuals were returned to their homes here in the United States of America, and ODI again lacked a single employee. ODI could be awarded a contract tomorrow that requires it to employ any number of employees, but the fact of the matter is that ODI has not been asked to operate any ships that require substantial number of employees for substantial periods of time.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 20th day of December, 2006.

_____
Robert T. Miller, Esquire